IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH BURCIAGA, <br><br> Plaintiff, <br><br> vs. <br><br> RAVAGO AMERICAS, LLC, <br><br> Defendant. | **No. 4:13-cv-00002 – JEG** <br><br> **O R D E R** |

This matter comes before the Court on Motion for Summary Judgment by Defendant Ravago Americas, LLC (Ravago). Plaintiff Elizabeth Burciaga (Burciaga) resists. The parties did not request a hearing, and the Court finds the Motion may be resolved without one. The matter is fully submitted and ready for disposition.

## I. INTRODUCTION

### A. Factual Background[1]

Ravago is an international company that distributes, sells, compounds, and recycles plastic and elastomeric raw materials. Channel Prime Alliance is one of Ravago's business units and distributes plastic and rubber resin. In August 2007, Burciaga began working for Channel Prime Alliance in Des Moines, Iowa, as a Customer Service Representative (CSR).[2] Burciaga was responsible for contact with sales representatives and customers, receiving and processing orders, scheduling shipments, and fixing customer issues. Customer Service Manager Jeremy Howe (Howe) served as Burciaga's supervisor for the duration of Burciaga's employment with Ravago.

---

[1] The facts set forth are either undisputed or viewed in the light most favorable to the non-moving party. Lexicon, Inc. v. ACE Am. Ins. Co., 634 F.3d 423, 425 n.1 (8th Cir. 2010). Additionally, any reasonable inferences that may be drawn from the facts must be drawn in favor of Burciaga. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2007).

[2] The parties agree that Ravago, as Channel Prime Alliance's parent company, is Burciaga's employer.

Throughout her employment at Ravago, Burciaga used FMLA leave multiple times. In 2008, Burciaga took FMLA leave following the birth of her oldest son. In September 2010, Burciaga again requested and received FMLA leave for January 2011 following the birth of her twin children.

Burciaga had several performance-related issues during her employment. Ravago did not have a written evaluation process for employees, and Howe never carried out a formal evaluation of Burciaga's job performance. However, Howe began taking notes about Burciaga's employment on May 23, 2011, after she took a longer than normal lunch break without notifying him. Howe indicated that taking long lunches was an issue he had addressed with other CSRs in the past but could not recall a specific conversation with Burciaga regarding this incident. Howe also could not recall taking notes on other CSRs after they had taken long lunches. Howe's notes from May 23, 2011, also indicated an issue regarding an order that needed to be triggered.[3] According to Howe, this was a significant issue but not one that required a corrective action form.[4] Howe indicated that he took these notes on his own initiative and that he took notes on other CSRs.

On February 17, 2012, Burciaga made a shipping mistake by reshipping an order that had already been shipped. It is unclear from the record whether a corrective action form was filled out following this incident; however, Howe had a discussion with Burciaga about the mistake. Howe counseled Burciaga to take her time and make sure she entered orders correctly and warned her of the possibility of termination if she continued to make mistakes.

The leave at issue in this case occurred on approximately July 27, 2012; Burciaga requested FMLA paperwork authorizing intermittent FMLA leave to care for her son. Burciaga's

---

[3] Howe indicated that "triggered" is the process by which an order is transmitted to Ravago's logistics company so a carrier can be assigned.

[4] A corrective action form is a form CSRs were required to fill out when they made mistakes in order to document the mistake and inform Ravago.

son had a medical condition that required several medical appointments and a hospital stay. Jennifer Feliciano (Feliciano), a payroll and benefits administrator located in Ravago's corporate human resources department in Orlando, Florida, processed the request. Burciaga's request was granted, and she took half days off related to appointments for her son on August 8, 2012; September 5, 2012; and September 6, 2012.

According to both Feliciano and Donna Comey (Comey), a human resources manager located in Ravago's corporate human resources department in Orlando, Florida, local management is normally notified when an employee uses FMLA leave. However, neither could definitively say that Howe was in fact notified at the time of the requests.

Howe stated that he was aware of Burciaga's leave; however, he was unaware that Burciaga's absences were covered by the FMLA and acknowledged that he did not have a general understanding of what the FMLA provides or addresses. Further, Howe said that he had discussions with Burciaga about time off, but the discussions were "very general," and his major concern was not her explanation, rather it was making sure her desk was covered.

Burciaga made a series of mistakes prior to her termination. On September 10, 2012, Burciaga made an error by entering 15,000 pounds into Ravago's system as the amount of ordered material when the actual amount was 22,500 pounds. Howe caught the mistake and told Burciaga to correct it. A corrective action form was not completed following this incident because Howe caught the mistake before the order shipped. Howe stated that after this mistake he "felt like [he] had to micromanage [Burciaga]." Howe Dep. 175:3-19, Def.'s App. 76, ECF No. 52-5. Howe noted that someone who had been with Ravago for five years, such as Burciaga, should not be required to have someone constantly looking over her shoulder.

On September 11, 2012, Burciaga submitted and shipped material under the wrong customer number. A corrective action form was completed following this incident. Howe had to remind Burciaga twice to fill out a corrective action form in connection with this mistake.

Again, Howe noted that he felt he had to "micromanage" Burciaga. Howe Dep. 176:15-25, Def.'s App. 77, ECF No. 52-5. Howe could not recall whether he ever had to remind other CSRs to complete a corrective action form.

On September 18, 2012, Burciaga shipped the wrong material to a customer. A corrective action form was filled out in connection with this incident.

On September 27, 2012, Burciaga entered an order directing a shipment to the wrong customer and location. A customer named "Bob" emailed Burciaga requesting an order. Burciaga did not verify the proper customer and entered the order for a customer named "Bob" in Arizona; the order was actually requested by a customer named "Bob" in Utah. Burciaga had prior experience with both customers. A corrective action form was filled out in connection with this incident.

On September 28, 2012, Burciaga informed John Eighmey (Eighmey), a logistics coordinator at Ravago, of her mistake. Eighmey told Burciaga the mistake was not a "big deal" and that the shipment was still at the carrier so he could reroute it to the right location. Eighmey also told Burciaga that he had seen other CSRs make bigger mistakes and even gave her a specific example. Later that day, Eighmey went to Howe to discuss the mistake. Eighmey wanted to bring it to Howe's attention that Burciaga seemed to be making shipping mistakes habitually.

Burciaga also discussed the mistake with Howe on September 28. Howe was surprised and angry because he felt that Burciaga should have known her customers. Howe did not believe that Burciaga should be making the kinds of mistakes or the number of mistakes she was making after being employed at Ravago for five years.

Howe then met with Stephen Kramer (Kramer), a controller at Ravago, to discuss the possibility of terminating Burciaga. Howe did not recall reviewing any documents or corrective action forms with Kramer or discussing Burciaga's previous shipping mistakes with him at that time. At that meeting, Howe came to the conclusion that Burciaga needed to be terminated.

Howe gained knowledge of Burciaga's FMLA leave on September 28, 2012, when he called the human resources department to discuss the procedure for terminating Burciaga's employment. Feliciano told Howe that Burciaga was on FMLA leave or had filled out FMLA paperwork. Howe told Feliciano that he did not know about Burciaga's FMLA activity prior to their conversation.

Later in the afternoon, Howe and Kramer met with Burciaga and informed her that she was terminated from Ravago because of her mistakes and poor performance. Kramer added that the mistakes were having a detrimental effect on the company's reputation. Howe cited his frustration that, after five years with Ravago, Burciaga did not know or understand her customers and did not take her mistakes seriously or try to improve on them. Neither Howe nor Kramer made any reference to Burciaga's FMLA leave or her time missed during the termination process. However, Howe later stated that he "was probably a little frustrated" by how often Burciaga had to be away from work to deal with family issues. Howe Dep. 143:7-10, Pl.'s App. 47, ECF No. 69-3.

## B. Procedural Background

On December 11, 2012, Burciaga filed a Petition at Law and Jury Demand in the Iowa District Court for Polk County. On January 2, 2013, Ravago timely removed the action to this Court under 28 U.S.C. § 1331. On January 28, 2013, Burciaga filed an Amended Complaint and Jury Demand alleging a cause of action based on the FMLA, 28 U.S.C. §§ 2601 et seq. Burciaga alleges she was discharged based on her use of FMLA leave. On February 7, 2013, Ravago filed an Answer and Affirmative Defenses, which denied Burciaga's allegations and asserted numerous affirmative defenses. On April 10, 2014, Ravago filed a Motion for Summary Judgment, which Burciaga resists.

## II.   JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331, as the claim, arising under the FMLA, is a matter of federal question.

## III.   DISCUSSION

### A.   Standard for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 commands the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Bearden v. Int'l Paper Co., 529 F.3d 828, 831 (8th Cir. 2008).  In making this determination, the judge is not to weigh the evidence or the credibility of the witnesses; rather, the judge must determine whether there are genuine issues of material fact to be resolved at trial.  Quick v. Donaldson Co., 90 F.3d 1372, 1376-77, 1381 (8th Cir. 1996).

The judge shall consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" in determining whether genuine issues of material fact exist.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); Hicks v. Armstrong, 253 F.3d 1072, 1076 (8th Cir. 2005).  "[A] fact is material if its resolution affects the outcome of the case."  Rakes v. Life Investors Ins. Co. of Am., 582 F.3d 886, 893 (8th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).  Additionally, the facts must have "a real basis in the record" to be genuine.  Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992).

Initially, the burden is firmly on the moving party to establish that no genuine dispute of material fact exists.  Fed. R. Civ. P. 56(c)(1); Celotex, 477 U.S. at 323.  This assertion must be supported by particular materials in the record or the lack thereof.  Fed. R. Civ. P. 56(c)(1).  Any reasonable inferences that may be drawn from the facts must be drawn in favor of the non-moving party.  Matsushita, 475 U.S. at 587; Morris, 512 F.3d at 1018.  However, general,

conclusory statements that are not supported by probative evidence "are insufficient to withstand a properly-supported motion for summary judgment. <u>Luciano v. Monfort Inc.</u>, 259 F.3d 906, 910 (8th Cir. 2001) (quoting <u>Helfter v. United Parcel Serv., Inc.</u>, 115 F.3d 613, 616 (8th Cir. 1997), <u>abrogated on other grounds by</u> <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031 (8th Cir. 2011). When the moving party has carried its burden under Rule 56(c), the non-moving party must assert "specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 323; <u>Rabushka ex. rel. United States v. Crane Co.</u>, 122 F.3d 559, 562 (8th Cir. 1997).

### B. Ravago's Evidentiary Objections

Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Ravago objects to corrective action forms submitted by Burciaga on the grounds that the documents have not been properly authenticated through affidavit or otherwise and the documents contain inadmissible hearsay. These documents consist entirely of corrective action forms from Ravago's "corrective action database." Burciaga seeks to use these forms, detailing mistakes made by other CSRs, as evidence that she was treated less favorably than other similarly-situated Ravago employees.

These corrective action forms were used to document various types of mistakes made by CSRs and are maintained as part of quality control tracking. If a CSR makes a mistake, they are responsible for creating a corrective action form to document that mistake. Within the form, the CSR details the mistake, generally including a description, root cause, and resolution. The forms are then approved by the quality manager and entered and maintained in Ravago's corrective action database. The corrective forms at issue were produced by Ravago during discovery and document mistakes made by other CSRs supervised by Howe.

"[I]n construing the record, the 'court may consider only the portion of the submitted materials that is admissible or usable at trial.'" <u>Moore v. Indehar</u>, 514 F.3d 756, 758 (8th Cir. 2008) (quoting <u>Walker v. Wayne Cnty.</u>, 850 F.2d 433, 434 (8th Cir. 1988). "[T]he standard is

not whether the evidence at the summary judgment stage would be admissible at trial – it is whether it *could* be presented at trial in an admissible form." <u>Gannon Int'l Ltd. v. Blocker</u>, 684 F.3d 785, 793 (8th Cir. 2012). Ravago does not directly challenge the authenticity of the documents; rather, it challenges the documents because they were not accompanied by affidavits. However, proper foundation could certainly be established for these documents if they are admitted at trial through the testimony of the people who created or maintained the documents.[5] Accordingly, Ravago's evidentiary objections regarding the lack of authentication for these documents are overruled in the summary judgment context.

Ravago also objects to these documents on the grounds that they are inadmissible hearsay. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The documents at issue are written assertions that qualify as statements. <u>Id.</u> at 801(a). The documents were completed out of court and are being used to assert that the mistakes outlined within the documents occurred. Therefore, these documents are hearsay.[6]

Hearsay statements, however, are admissible if they meet one of the exceptions provided by the Federal Rules of Evidence. <u>Id.</u> at 802. Rule 803(6) sets forth the requirements of the "business records" exception to hearsay exclusion:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>     (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;
>     (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>     (C) making the record was a regular practice of that activity;

---

[5] In fact, Ravago presents very similar documents in their appendix.

[6] The Court finds that the documents could be used for the non-hearsay purpose of illustrating Ravago and Howe's reaction to the documents. However, Burciaga does not dispute that she made shipping mistakes; therefore, in order to show that other CSRs made similar mistakes and were similarly situated to her, the documents must be used to demonstrate the truth of the matter.

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, . . . ; and
(E) neither the source of the information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Id. at 803(6).

The first requirement is satisfied because the documents were generated by the CSRs at or near the time they made the mistakes. The second requirement is met because CSRs use the corrective action forms to document shipping and processing mistakes; shipping and processing is a regularly conducted activity of Ravago. The third requirement is met because filling out these forms was a regular practice when shipping mistakes were made. At trial, a witness could be called to authenticate the documents; and, therefore, the fourth requirement is met. Ravago does not explicitly challenge the trustworthiness of the documents. The documents bear Ravago's logo, were kept as part of a corrective action database, and were submitted as part of discovery. Additionally, the information contained in the reports was entered by CSRs who were documenting their own mistakes and would have no reason to document the mistakes unless they actually occurred. These factors indicate trustworthiness rather than a lack thereof. Because the requirements of Rule 803(6) are met, these documents fall under a hearsay exception and are admissible. Accordingly, Ravago's hearsay objection is overruled in the summary judgment context.

## C.  Family and Medical Leave Act Claim

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" for any of the specified reasons outlined in the Act. 29 U.S.C. § 2612(a)(1); see Darby v. Bratch, 287 F.3d 673, 679 (8th Cir. 2002). The FMLA prohibits interference with any rights protected by the Act and prohibits discrimination of any kind, including discharge, against an employee for asserting rights protected by the Act. 29 U.S.C. § 2615(a)(1)-(2); Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006).

The Eighth Circuit recognizes three types of claims arising under the FMLA. Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005-06 (8th Cir. 2012). The first type is an "entitlement" claim, "where an employer refuses to authorize leave under the FMLA or takes other actions to avoid responsibilities under the Act." Id. at 1005. The second type is a "retaliation" claim, where an employer takes adverse action against an employee who opposes a practice prohibited by the FMLA. Id. at 1005-06. The third type is a "discrimination" claim, where "an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." Id. at 1006. Here, Burciaga asserts a discrimination claim. To succeed on her FMLA discrimination claim, Burciaga must prove that Ravago was motivated by her FMLA leave when it terminated her. Pulczinski, 691 F.3d at 1006.

Absent direct evidence of discrimination, the McDonnell Douglas burden-shifting analysis applies to this type of claim under the FMLA. Id. at 1007; Wierman v. Casey's Gen. Stores, 638 F.3d 984, 999 (8th Cir. 2011); Phillips v. Mathews, 547 F.3d 905, 912 (8th Cir. 2008). Under this analysis, Burciaga has the initial burden of establishing a prima facie case of FMLA discrimination. Sisk v. Picture People, Inc., 669 F.3d 896, 899 (8th Cir. 2012); Phillips, 547 F.3d at 912. If Burciaga establishes a prima facie case, it creates a presumption of unlawful discrimination. Sisk, 669 F.3d at 899. The burden then shifts to Ravago to proffer a legitimate, non-discriminatory reason for Burciaga's termination. Id.; Wierman, 638 F.3d at 999. Ravago's burden is a burden of production. Sisk, 669 F.3d at 899. If Ravago proffers a legitimate, non-discriminatory reason, the burden shifts back to Burciaga to show that Ravago's reason is pretext and hence illegitimate. Id.; Wierman, 638 F.3d at 999.

### 1. Prima Facie Case

To establish a prima facie case of FMLA discrimination, Burciaga must prove that "1) she engaged in protected conduct; 2) she suffered a materially adverse employment action; and

3) the materially adverse action was causally linked to the protected conduct." <u>Wierman</u>, 638 F.3d at 999.

It is undisputed that Burciaga has satisfied the first two prongs of her prima facie case. Burciaga engaged in protected activity by taking leave under the FMLA. 29 U.S.C. § 2612(a)(1)(A) and (C). It is also clear that Burciaga suffered a materially adverse employment action when she was terminated. <u>Wierman</u>, 638 F.3d at 999 ("Unquestionably, termination is an adverse employment action.").

The third prong of Burciaga's prima facie case is proving that "the materially adverse action was causally linked to the protected conduct." <u>Id.</u> In order to show a causal connection, Burciaga must show that her statutorily-protected use of FMLA leave "played a part" in Ravago's decision to terminate her. <u>Pulczinski</u>, 691 F.3d at 1007 (quoting <u>Marez v. St.-Gobain Containers, Inc.</u>, 688 F.3d 958, 963 n.3 (8th Cir. 2012)). Burciaga must present "evidence sufficient to give rise to an inference of a causal link" between her use of FMLA leave and her termination. <u>Kipp v. Mo. Highway and Transp. Comm'n</u>, 280 F.3d 893, 896 (8th Cir. 2002). "For the causation element to be satisfied, 'decision-makers must have awareness of the [plaintiff's] protected activity.'" <u>Lockridge v. HBE Corp.</u>, 543 F. Supp. 2d 1048, 1060 (E.D. Mo. 2008) (quoting <u>Robinson v. Potter</u>, 453 F.3d 990, 994 (8th Cir. 2006)).

As a threshold matter, Burciaga must show that the decision makers who terminated her employment with Ravago had knowledge of her use of FMLA leave. <u>See</u> <u>Robinson</u>, 453 F.3d at 994 (holding causation could not be established because none of the decision makers had knowledge of the plaintiff's protected conduct); <u>see also</u> <u>Porter v. City of Lake Lotawana</u>, 651 F.3d 894, 898-99 (8th Cir. 2011) (discussing knowledge as a key component in establishing the plausibility of a Title VII claim). The knowledge requirement follows from the principle that "an employer is not liable . . . if its adverse decision was unrelated to the employee's use of FMLA leave." <u>Lovland v. Emp'rs Mut. Cas. Co.</u>, 674 F.3d 806, 812 (8th Cir. 2012). Plainly, Burciaga's

use of FMLA leave could not have "played a part" in Ravago's decision to terminate her if the decision makers at Ravago did not have knowledge of that use. See Pulczinski, 691 F.3d at 1007 (quoting Marez, 688 F.3d at 963 n.3).

Ravago argues that Burciaga is unable to establish a prima facie case because she is unable to demonstrate that the decision makers – Howe, Kramer, and possibly Comey – had knowledge of her use of FMLA leave. Additionally, Ravago contends that Howe and Kramer had already made the decision to terminate Burciaga when Feliciano told Howe that she was either on FMLA leave or had filled out FMLA paperwork, and Comey was unaware of Burciaga's FMLA activity when she approved the termination. In her resistance, Burciaga argues the record contains genuine factual disputes as to whether Ravago's decision makers had knowledge of Burciaga's use of FMLA leave. Burciaga argues that Howe was informed by Feliciano of Burciaga's FMLA activity before Howe made the decision to terminate her, that local management was normally notified when an employee would be out on FMLA leave, and that local management also tracked their employees' use of FMLA leave. Burciaga asserts that Comey had knowledge of Burciaga's FMLA activity because Feliciano said that she reviewed FMLA requests and FMLA paperwork with Comey, including Burciaga's request from July 2012. Burciaga does not assert that Kramer had knowledge of her FMLA activity. In Ravago's Reply, it asserts that Feliciano's testimony amounts to general claims that lack any personal knowledge of whether Howe was informed of Burciaga's FMLA activity. Ravago claims that Burciaga provides no evidence as to when Comey gained knowledge of Burciaga's FMLA activity.[7]

In order to determine whether Burciaga can demonstrate that the decision makers had knowledge of her FMLA activity before terminating her, the Court must first decide who reason-ably qualifies as a decision maker. To qualify as a decision maker, a person does not need to be the ultimate decision maker; rather, decision makers are people "involved in the decision-making

---

[7] Ravago also asserts in its reply that Comey's knowledge is irrelevant as she did not make the termination decision. This is somewhat at odds with Ravago's initial brief.

process." See Rivers-Frison v. SE Mo. Cmty. Treatment Ctr., 133 F.3d 616, 619 (8th Cir. 1998) (quoting Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993)) (discussing decision makers in the context of a direct evidence analysis). The analysis focuses on whether the person had a substantive role "in the process of deciding whether to terminate [the plaintiff]." Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 966 (8th Cir. 2006).

Howe was Burciaga's supervisor; he initially proposed terminating Burciaga, discussed it with Kramer, and came to the conclusion that Burciaga needed to be terminated; he also communicated with the human resources department about the termination process. Howe called the meeting at which Burciaga was terminated and communicated to Burciaga that she was terminated. These facts indicate that Howe was intimately involved in deciding whether Burciaga should be terminated. Therefore, the undisputed facts suggest that Howe qualifies as a decision maker.

Howe solicited Kramer's opinion on the possibility of terminating Burciaga. Notably, Howe stated that he and Kramer reached the conclusion to terminate Burciaga together and that he "wouldn't make a termination without discussing it with Steve Kramer or HR." Kramer also participated in Burciaga's termination meeting. These facts indicate that Kramer was also intimately involved in deciding whether Burciaga should be terminated. Therefore, the undisputed facts suggest that Kramer qualifies as a decision maker.

Comey's role in Burciaga's termination was limited to approving the termination from a human resources level and sending an email response to Howe in which she told him to send her a change of status report once Burciaga had been terminated. The Eighth Circuit has held that an employee was not a decision maker even when "he gathered attendance records for the inquiry [into the plaintiff's attendance], authored the memorandum conveying the news of [the plaintiff's] termination, and presented the termination document to [the plaintiff]" because the employee was acting as "a messenger for the human resources manager." Schierhoff, 444 F.3d

at 966.  Similarly, Comey was acting as a messenger for the human resources department, rather than actually playing a substantive role in deciding whether Burciaga should be terminated.  In her correspondence with Howe, Comey expressed no opinion as to whether Burciaga should be terminated.  These facts indicate that Comey was not intimately involved in deciding whether Burciaga should be terminated.  Therefore, the Court cannot find a basis in the record to suggest that Comey qualifies as a decision maker.

Accordingly, the Court determines that Howe and Kramer qualify as decision makers. The next question is if the record generates an issue whether Howe and/or Kramer had knowledge of Burciaga's FMLA activity prior to Burciaga's termination.  In order to find the decision maker had knowledge of the employee's FMLA leave, the employee "need not explicitly assert rights under the FMLA or even mention the FMLA."  Rask v. Fresenius Med. Care N. Am., 509 F.3d 466, 471-72 (8th Cir. 2007) (quoting 29 C.F.R. § 825.303(a), (b)).  An "employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave."  Id. at 471-472 (quoting Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir. 1999)).

Kramer stated that he had no knowledge of Burciaga's FMLA activity and only had a general awareness of Burciaga's son's medical issues.  The Eighth Circuit has required knowledge of "more than the mere fact that [the plaintiff] had been diagnosed with something called 'depression' to put [the employer] on notice."  Rask, 509 F.3d at 472-73.  Similarly, Kramer's general awareness that Burciaga's son had medical issues is not specific enough information to put him on notice that she may be in need of FMLA leave.  Kramer was not Burciaga's supervisor, did not monitor her schedule, and did not have sufficient regular contact with her regarding her time off as to give him knowledge.  Accordingly, the Court cannot find a basis in the record to suggest Kramer had knowledge of Burciaga's FMLA protected activity.

It is undisputed that Burciaga never told Howe that she took FMLA leave. However, on September 28, 2012, when Howe called the human resources department in Orlando regarding the procedure for terminating Burciaga, Feliciano informed Howe that Burciaga either was on FMLA leave or had filled out FMLA paperwork. Feliciano stated that Howe "was thinking about what he needed to do" regarding Burciaga's employment. Feliciano Dep. 50:2-11, Pl.'s App. 25, ECF No. 69-3. Howe stated that the decision to terminate Burciaga was made by the end of his meeting with Kramer on the morning of September 28, 2012. However, he also vaguely said the decision was made sometime in the morning. This conflicting testimony amounts to a factual dispute about whether Howe had knowledge of Burciaga's FMLA leave at the time he made the decision to terminate. See Quick, 90 F.3d at 1376-77. Regardless, Howe's knowledge about Burciaga's previous maternity leave is likely sufficient to put Howe on notice under the standard articulated in Rask.

Assuming Howe had knowledge of Burciaga's use of FMLA leave prior to terminating her, Burciaga still must establish a causal connection between her use of FMLA leave and the decision to terminate her. Wierman, 638 F.3d at 999; see Nelson v. J.C. Penney Co., 75 F.3d 343, 346 (8th Cir. 1996) (holding that supervisor's knowledge of discrimination complaint alone was not enough to raise inference of causation). Burciaga may establish a causal connection between her use of FMLA leave and her termination through a variety of circumstantial evidence. Elliserio v. United Steelworkers of Am. Local 310, 398 F.3d 1071, 1079 (8th Cir. 2005).

Burciaga claims causation is demonstrated by evidence that Ravago treated similarly-situated employees more favorably. Burciaga provides a chart detailing the amount and frequency of mistakes by other CSRs at Ravago's Des Moines facility. Burciaga also points to Howe's statement that he was frustrated that Burciaga missed so much time. Additionally, Burciaga asserts the timing between her use of FMLA leave and her termination demonstrates causation.

To prove causation, Burciaga partially relies on the temporal proximity between her use of FMLA leave and her termination. Temporal proximity can be used to establish a causal connection. Id. at 1079. However, "[t]emporal evidence should generally be corroborated by other evidence of employment discrimination." Marez, 688 F.3d at 963. Further, "[c]ases in which we have determined that temporal proximity alone was sufficient to create an inference of the causal link have uniformly held that the temporal proximity must be very close." Id. (quoting Hite, 446 F.3d at 866).

Burciaga was terminated on September 28, 2012. The latest possible date for her FMLA protected activity was September 5 and 6 when she took half days to accompany her son to medical appointments. This calculates to a gap of twenty-two days or just over three weeks. The Eighth Circuit has held that a two-week gap was "sufficient, but barely so, to establish causation." Smith v. Allen Health Sys., 302 F.3d 827, 833 (8th Cir. 2002). However, the twenty-two day gap here is insufficient, on its own, to establish causation. Additionally, the series of mistakes Burciaga made between her last FMLA protected activity and her termination "eroded any causal connection that was suggested by the temporal proximity of [her] protected conduct and [her] termination." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999).

In addition to temporal proximity, Burciaga relies on comments Howe made concerning his frustration with Burciaga's absences to show that her absences played a part in her termination. Discriminatory comments and actions can aid in proving causation. Hite, 446 F.3d at 866. Howe admitted that he was "probably a little frustrated" by how often Burciaga needed to be away from work. Howe Dep. 143:7-10, Pl.'s App. 47, ECF No. 69-3. Howe also took notes about Burciaga, asked Burciaga about the status of her PTO balance, and called Burciaga to inquire when she would return to work when she had the flu.

Frustration alone is insufficient to establish causation. To provide an inference of causation, Howe's comments must suggest that his frustration was with the use of leave and that it played a part in the decision to terminate Burciaga. The Eighth Circuit has found an inference of causation was warranted where the decision maker questioned the employee's use of FMLA leave and threatened termination if the employee continued to use FMLA leave. Hite, 446 F.3d at 866-67; see also Gordon v. Girard Treatment Programs, LLC, 390 F. Supp. 2d 826, 843 (N.D. Iowa 2005) (finding inference of retaliation where decision maker questioned employee's calculation of leave and said employee pushed the envelope with regard to FMLA leave). Howe never mentioned Burciaga's time off throughout the entire termination process, and he never questioned her use of FMLA leave or threatened her regarding her use of FMLA leave. Burciaga did not receive any escalating retaliatory action after her FMLA leave. See Hite, 446 F.3d at 867 (employee was questioned about FMLA leave and reassigned); Bassett v. City of Minneapolis, 211 F.3d 1097, 1105-06 (8th Cir. 2000) (employee received negative performance reviews, oral reprimands, and work suspensions), abrogated on other grounds by Torgerson, 643 F.3d at 1031. Burciaga's missed time related to FMLA leave was not held against her. See Wierman, 638 F.3d at 1000-01 (absences that were possibly FMLA-protected used against employee). Howe's concerns about Burciaga's PTO balance and returning to work when she was sick are in line with Howe's undisputed contention that he was not concerned with why Burciaga was gone, only that her desk was covered.

The record contains Howe's notes on Burciaga, two of which are unrelated to Burciaga's shipping mistakes. The first note relates to Burciaga taking a long lunch without notifying Howe on May 23, 2011. This was at least three months after Burciaga returned from maternity leave in January 2011, and therefore not in close proximity to the protected activity. See Kipp, 280 F.3d at 897 ("Here, the interval of two months between the complaint and Ms. Kipp's termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the

temporal connection could not justify a finding in Ms. Kipp's favor on the matter of causal link."). The second note relates to Burciaga arriving late to work without informing Howe on December 21, 2011. This note indicates that, after discussion with Burciaga, Howe agreed to move her start time back a half hour. This note was not in close proximity to any of Burciaga's protected activity. Furthermore, rather than hostility, this note indicates the flexibility that Burciaga admitted Howe exhibited regarding her schedule.

Burciaga also presents evidence that similarly-situated employees were treated more favorably than her to show a causal connection between her use of FMLA leave and her termination. However, in FMLA cases, this evidence is usually analyzed as part of the pretext stage of the McDonnell Douglas analysis. See, e.g., Hite, 446 F.3d at 867 (analyzing evidence that the plaintiff was treated differently than other similarly-situated employees when discussing pretext); Smith, 302 F.3d 827 at 835 (same). Accordingly, the Court will examine this evidence at the pretext stage of the McDonnell Douglas analysis.

Here, the evidence of temporal proximity alone is insufficient to establish a causal connection between Burciaga's use of FMLA leave and her termination. Additionally, the evidence regarding Howe's general attitude toward Burciaga's time away from the office does not generate a material issue of fact to infer that her FMLA-related absences played a part in her termination. The factual questions that develop in the record, while suggesting there was more to the termination than expressed, do not generate material issues of fact that adequately connect to the use of FMLA leave. Accordingly, the Court must find Burciaga has failed to establish her prima facie case, and Ravago is entitled to judgment as a matter of law.

### 2. Ravago's Legitimate, Nondiscriminatory Reason

Even assuming Burciaga could establish a prima facie case, the burden would shift to Ravago to produce a legitimate, nondiscriminatory reason for Burciaga's termination. Sisk, 669 F.3d at 899; Wierman, 638 F.3d at 999. The reason need not be "wise, fair, or even correct,

ultimately, so long as it truly was the reason for the plaintiff's termination." <u>Wilking v. Cnty. of Ramsay</u>, 153 F.3d 869, 873 (8th Cir. 1998) (quoting <u>Giannopolous v. Brach & Brock Confections, Inc.</u>, 109 F.3d 406, 411 (7th Cir. 1997)).

Ravago has offered Burciaga's poor performance and mistakes as legitimate, nondiscriminatory reasons for her termination. Ravago's burden is simply one of production, and Burciaga does not argue Ravago failed to meet it. The Court finds that Ravago has met its burden of proffering a legitimate, nondiscriminatory reason for Burciaga's termination. <u>See</u> <u>Sisk</u>, 669 F.3d at 899.

### 3. Pretext

Once Ravago has met its burden of proffering a legitimate, nondiscriminatory reason, the burden shifts back to Burciaga to show that Ravago's reason is pretextual. <u>Wierman</u>, 638 F.3d at 999. "The ultimate question . . . is whether the employer's conduct was motivated by [discriminatory] intent." <u>Id.</u> In reviewing Ravago's proffered reason, the Court is mindful that "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions . . . rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." <u>Wilking</u>, 153 F.3d at 873 (quoting <u>Harvey v. Anheuser-Busch, Inc.</u>, 38 F.3d 968, 973 (8th Cir. 1994)). It should be noted that "[a]n employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave." <u>Estrada v. Cypress Semiconductor (Minn.) Inc.</u>, 616 F.3d 866, 871 (8th Cir. 2010).

Burciaga relies on the strength of her prima facie case to demonstrate pretext. Burciaga also contends pretext is demonstrated by the fact that she was treated worse than other similarly-situated Ravago employees. Further, Burciaga claims Howe exaggerated the seriousness of Burciaga's mistakes and made comments during the termination meeting that indicated the lack of objective criteria used in the termination decision.

"If the employee presents strong evidence of a prima facie case, then such evidence may establish pretext." Hite, 446 F.3d at 867. "On the other hand, where the plaintiff's prima facie case is not sufficiently strong, the plaintiff must generate a triable issue that she can satisfy her 'ultimate burden' to show that her discharge was the result of unlawful discrimination." Habben v. City of Fort Dodge, 472 F. Supp. 2d 1142, 1163 (N.D. Iowa 2007). Burciaga's prima facie case on the issue of a causal connection between her protected activity and her termination is not strong; therefore, Burciaga must produce other evidence that demonstrates pretext. Any inference of pretext based on the temporal proximity between Burciaga's protected activity and her termination is diluted by the fact that she made several shipping mistakes in the intervening time. See Smith, 302 F.3d at 834 (rejecting pretext based on temporal proximity because of the seriousness of the plaintiff's dereliction of job duties). Howe's comments and actions are also insufficient to demonstrate pretext because Burciaga has failed to provide evidence that Howe's conduct was motivated by discriminatory intent. See Wierman, 638 F.3d at 999.

Burciaga could also demonstrate pretext by showing that Ravago's reason for termination has no basis in fact. Smith, 302 F.3d at 834. However, Burciaga admits that she made the mistakes and that Howe had previously cautioned her about possible termination if she continued to make them.

To demonstrate pretext, Burciaga presents evidence that similarly-situated employees were treated more favorably. Burciaga does not need to show that the other CSRs were identical to her, only that they were substantially similar. Ridout v. JBS USA, LLC, 716 F.3d 1079, 1085 (8th Cir. 2013). "Employees are similarly situated when they 'are involved in or accused of the same offense and are disciplined in different ways.'" Harvey, 38 F.3d at 972 (quoting Boner v. Bd. of Comm'rs, 674 F.2d 693, 697 (8th Cir. 1982)). "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged

in the same conduct without any mitigating or distinguishing circumstances." Bone v. G4S
Youth Servs., LLC, 686 F.3d 948, 956 (8th Cir. 2012) (quoting Clark v. Runyon, 218 F.3d 915,
918 (8th Cir. 2000)).  Employees are not similarly-situated when their infractions involve
"objectively different conduct." Ward v. Proctor & Gamble Paper Prods. Co., 111 F.3d 558, 561
(8th Cir. 1997).

The record contains evidence that other CSRs made shipping mistakes.  However, the
mistakes made by other CSRs do not rise to the level of frequency and/or seriousness of
Burciaga's mistakes.  Leading up to her termination, Burciaga made four shipping mistakes in
seventeen days.  Burciaga's final mistake in this series was failing to recognize the difference
between two customers with whom she had prior experience.

Burciaga points to several other CSRs as potential comparators.  None of the potential
comparators ever made more than three mistakes in any seventeen-day span.  Additionally, none
of the potential comparators ever directed a shipment to the wrong customer because they failed
to differentiate between two customers with whom they had prior experience.

Howe was frustrated by the number and type of mistakes Burciaga was making, culmi-
nating with her shipping material to the wrong customer because she failed to recognize the
identity of her customers on September 27, 2012.  This final mistake was not just a data-entry or
shipping mistake; rather, it was a failure by Burciaga to recognize customers with whom she had
prior experience.  The record is clear that Howe viewed this mistake as something more funda-
mental that implicated the company's reputation more seriously than other mistakes made by
CSRs.  Id. ¶¶ 62-63; Howe Dep. 173:25-174:13, Def.'s App. 74-75, ECF No. 52-5  ("Ultimately,
not knowing who her customers are, who she worked with on a daily basis, more so than some-
thing within a month, I couldn't put the company at risk that she would ship to any other wrong
customer.").  The Court agrees that this type of mistake is "objectively different" than other

mistakes made by CSRs.  See Ward, 111 F.3d at 561.  Upon review of the disciplinary treatment of other employees and the related circumstances, the Court must find Burciaga was not similarly-situated to these other CSRs.

Burciaga was not similarly-situated to other CSRs, so she is unable to use evidence of other CSRs' mistakes to demonstrate pretext.  Furthermore, the fact that Burciaga had used FMLA leave twice previously without adverse action further erodes any evidence of pretext and the inference of discrimination related to such evidence.  Chappell v. Bilco Co., 675 F.3d 1110, 1120 (8th Cir. 2012).  Accordingly, Ravago is entitled to judgment as a matter of law.

## IV.    CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment, ECF No. 52, must be **granted**.  This case is dismissed.  The Clerk is directed to enter judgment in favor of Defendant and against the Plaintiff.

**IT IS SO ORDERED.**

Dated this 4th day of August, 2014.

JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT